The Honorable James L. Robart

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10 CASEY TAYLOR and ANGELINA TAYLOR,
husband and wife and the marital community
11 composed thereof,

NO. 2:11-cv-01289-JLR

12                                          Plaintiffs,

**DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

13        v.

14 BURLINGTON NORTHERN RAILROAD
HOLDINGS, INC., a Delaware Corporation
15 licensed to do business in the State of Washington,
and BNSF RAILWAY COMPANY, a Delaware
16 Corporation licensed to do business in the State of
Washington,

**NOTE ON MOTION CALENDAR:
January 8, 2016**

17
                                          Defendants.
18

19                          **I. RELIEF REQUESTED**

20        Pursuant to Fed. R. Civ. P. 56, defendants Burlington Northern Railroad Holdings,

21 Inc. and BNSF Railway Company (collectively "BNSF") move this Court for an order

22 granting summary judgment dismissing plaintiffs' claims against BNSF.

23        Plaintiffs claim that BNSF discriminated against Casey Taylor ("Taylor") based on a

24 perceived disability and his veteran status. BNSF had extended Taylor a job offer for a safety-

25 sensitive position contingent upon the outcome of a post-offer medical review. Upon learning

26 Taylor had a Body Mass Index over 40 and issues with his knees and back, BNSF requested



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1  additional medical information from Taylor to determine whether he could safely perform the
2  job. Taylor never provided the requested medical information so BNSF was unable to
3  determine if Taylor was medically qualified for the position.

4        Plaintiffs' claims of disability discrimination and veteran discrimination fail because
5  1) Taylor was not disabled; 2) BNSF did not perceive Taylor to be disabled; 3) Taylor failed
6  to provide permissibly requested job-related information; and 4) no reasonable fact-finder
7  could determine that BNSF made any adverse determination against Taylor on the basis of
8  disability or veteran status. The undisputed material facts therefore entitle BNSF to summary
9  judgment as a matter of law.

## II. STATEMENT OF UNDISPUTED FACTS

11        Taylor applied for employment with BNSF on June 27, 2007. Declaration of Britenae
12  Pierce ("Pierce Decl.") Ex. A. The application states:

> It is the policy of the company as an Equal Opportunity Employer to assure
> that there shall be no discrimination against any employee or applicant for
> employment on the grounds of age, race, color, creed, religion, sex, sexual
> preference, national origin, disability or veteran status, or any other status
> protected by law.

16  *Id.* Taylor's application listed his most recent employment history as a five-year member of
17  the United States Marine Corps. *Id.* Taylor also electronically signed his agreement that:

> If an offer of employment is made, I consent to undergo any required medical
> examinations as a condition of my initial employment, continuing employment
> and fitness for any other positions for which a discovered disability is job
> related. BNSF will provide qualified applicants and employees with
> disabilities reasonable accommodation(s) that do not impose undue hardship,
> or a direct threat to health or safety.

*Id.*

23        One of the positions Taylor applied for was Electronic Technician. *Id.* The job is
24  considered to be a safety-sensitive position. Pierce Decl., Ex. B at Jarrard 2nd Dep. 29:13-25.
25  The job duties for Electronic Technician include repairing telecommunications equipment on
26  trains, removing and installing surface mount components on trains, and installation and



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

repair of hardware components of Train Control systems. *Id.*, Pierce Decl., Ex. C. The job requirements include the ability to install 40 pound overhead radio equipment in locomotives and lift and carry test equipment that can weigh up to 51 lbs. *Id.*

On October 29, 2007, Taylor completed the interview process and was extended a conditional offer of employment as an Electronic Technician. Pierce Decl., Ex. D. BNSF advised Taylor that the offer was a "conditional offer of employment" and stated "please do not tender a resignation with your current employer until you are notified by BNSF, as this is only a conditional offer." *Id.* BNSF further stated that "this offer is contingent on the favorable outcome of a pre-employment background screening consisting of the following: physical examination … and review of a completed BNSF medical history questionnaire." *Id.* BNSF also stated "it is imperative that you complete the online Post Offer Medical Questionnaire through CHS (BNSF's medical contractor)" and that Taylor must "complete the medical qualification process within 30 days of this offer or by the date this position is to begin work – whichever is sooner or this offer could be rescinded." *Id.*

Taylor completed the medical questionnaire on October 29, 2007. Pierce Decl., Ex. E at BNSF-TAYLOR 52. On the questionnaire, Taylor reported his height as 5'7" and his weight as 250 pounds. *Id.* He also stated that he had bursitis in his knees and lower back pain due to Marine Corps physical training. *Id.* at Questions 22.g. and 22.b. Taylor described his health as "Excellent". *Id.* at BNSF-TAYLOR 57, Question 1.

Thereafter, Taylor submitted to a medical examination, which showed that Taylor's actual height (5'6") and weight (256lbs) measurements resulted in a Body Mass Index ("BMI") calculation of 41.3. Pierce Decl., Ex. F. On November 7, 2007, CHS referred Taylor's medical information to BNSF's Medical Department for review and determination of Taylor's medical qualification for employment in the safety-sensitive position of Electronic Technician. *Id.* Taylor did not have his own medical records available at the time. *Id.* Taylor indicated to CHS that he would request his medical records from the "Seattle office of the

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 3
            NO. 2:11-cv-01289-JLR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1131741 10

Veteran's [sic] Administration." Pierce Decl., Ex. G.

On November 8, 2007, BNSF's Medical Department advised Taylor it was "unable to determine medical qualification for Electronic Technician position due to significant health and safety risks associated with extreme obesity (Body Mass Index near or above 40) and uncertain status of knees and back." Pierce Decl., Ex. H. The letter offered two alternatives for Taylor to supply information so that BNSF could evaluate his qualification. *Id.* One option was for Taylor to provide the following:

1) Sleep study (polysomnogram or Maintenance of Wakefulness Test),

2) Medical report from your doctor documenting measured blood pressure, fasting blood sugar level, fasting lipid profile (total, HDL, LDL cholesterol and triglycerides), smoking history and other cardiac risk factors,

3) Exercise Tolerance Test to document your safe exercise capacity

4) Physician's office or athletic facility documentation of hip and waist measurement: waist (at or below navel) and hip (where buttocks are the largest)

5) Veteran's [sic] Administration Disability Determination, once available - the complete report with findings.

Pierce Decl., Ex. I. Alternately, without producing the above-listed information, Taylor's medical qualification could be reconsidered upon loss of 26 pounds and maintaining that weight for at least six months. *Id.*

After receiving the letter referenced above, Taylor contacted BNSF's Medical department "to have this temporary finding reversed." Pierce Decl., Ex. J. Taylor stated "I am confident that I will be able to prove that I have no medical conditions that will be a disqualifying factor for me in this position." *Id.*

Taylor subsequently received his Veterans Affairs ("VA") disability determination dated November 26, 2007 and disability forms. Pierce Decl., Ex. K. Taylor did not send the VA disability determination or his military medical records to BNSF. Pierce Decl., Ex L at Taylor Dep. Vol. 1 42:8-15. In fact, Taylor never provided BNSF any further information.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

Pierce Decl., Ex L at Taylor Dep. Vol. 1 41:16-42:15.

Taylor and his wife Angelina Taylor filed this suit seeking damages based on two theories. *See* Complaint for Damages. First, plaintiffs base their "regarded as" disability discrimination claim on allegations that BNSF *perceived* Taylor to have a disability. *Id.* at 4. Second, plaintiffs claim veteran status discrimination based on BNSF's inquiry into Taylor's military related disability status. *Id.* at 5. None of plaintiffs' claims have any merit.

### III. EVIDENCE RELIED UPON

This Motion relies upon the contemporaneously filed Declaration of Britenae Pierce and attached exhibits and the files and records herein.

### IV. AUTHORITY

**A.    The summary judgment standard favors dismissal of plaintiffs' claims.**

The Court should grant summary judgment when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is mandatory where the non-moving party fails to make a sufficient showing to establish an essential element of its case, on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must present affirmative evidence to demonstrate specific facts showing a genuine issue exists for trial, and cannot rest on mere allegations. *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

No genuine issue of material fact exists for trial. Taylor applied for a safety-sensitive position with BNSF. When learning Taylor had a BMI over 40 and issues with his knees and back, BNSF required additional medical information to determine whether Taylor could perform the duties of that position safely. Taylor failed to produce any of the requested information. Under the governing law, the undisputed facts do not support a legally

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1131741.10

cognizable claim of disability or veteran status discrimination.

**B.** **Taylor's WLAD disability discrimination claim fails as a matter of law.**

The Washington Law Against Discrimination (WLAD) states an employer may not

> refuse to hire any person because of ... the presence of any sensory, mental, or physical disability... unless based upon a bona fide occupational qualification: PROVIDED, That the prohibition against discrimination because of such disability shall not apply if the particular disability prevents the proper performance of the particular worker involved....

RCW 49.60.180(1).

Dismissal of Taylor's disability discrimination claim is appropriate because there was no refusal to hire Taylor and there was no disability. Further, dismissal is independently warranted because BNSF was permissibly seeking to determine whether Taylor could safely perform the Electronic Technician job. The discrimination prohibition under the WLAD does not apply in either of these circumstances.

    1.    <u>Taylor has no actual or perceived disability, which is fatal to his disability discrimination claim.</u>

The burden is on the claimant to present a prima facie case of discrimination. *Michelsen v. Boeing Co.*, 63 Wn. App. 917, 921, 826 P.2d 214, 215 (1991). To state a prima facie case under the WLAD, a plaintiff must demonstrate that he is a person with a disability. *Id.* As explained below, to be a person with a disability, the person must have an impairment, or be perceived to have an impairment. *Morriss v. BNSF Ry. Co.*, 2014 U.S. Dist. LEXIS 163773, *7 (D. Neb. Nov. 20, 2014) (appeal filed).[1] Summary judgment therefore is appropriate.

Under the WLAD:

Disability is the presence of a sensory, mental, or physical *impairment* that:

---

[1] Washington courts often look to federal decisions in applying the WLAD, thus federal law is instructive here. *See Clarke v. Shoreline School Dist.*, 106 Wn.2d 102, 118, 720 P.2d 793 (1986).


Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

...

(iii) Is perceived to exist whether or not it exists in fact.

RCW 49.60.040(7)(a) (emphasis added).

Taylor makes his disability discrimination claim under this category only, *i.e.* presence of a sensory, mental, or physical *impairment* is perceived to exist whether or not it exists in fact. Complaint at III.A. Taylor claims BNSF regarded him as disabled based on "[d]isabilities and impairments associated with obesity." Pierce Decl., Ex. M. Taylor does not claim that at the time of his application he actually had any impairment associated with obesity; he only claims BNSF perceived he did. Pierce Decl., Ex. N.

"For purposes of this definition [in the WLAD], 'impairment' includes, but is not limited to:

> (i)   Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological, musculoskeletal, special sense organs, respiratory, including speech organs, cardiovascular, reproductive, digestive, genitor-urinary, hemic and lymphatic, skin, and endocrine; or
>
> (ii)  Any mental, developmental, traumatic, or psychological disorder, including but not limited to cognitive limitation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

RCW 49.60.040(7)(c).

Taylor's elevated BMI is not an "impairment" and BNSF could not have perceived it to be an impairment. Elevated BMI, or obesity, is not a physiological disorder or condition in itself that affects the body systems. It certainly is not cosmetic disfigurement or anatomical loss. While studies have shown that a BMI of over 40 raise the likelihood that a disorder or condition that affects the body systems will develop in the future, the elevated BMI itself does not constitute such a disorder or condition. Pierce Decl. Ex. O at Jarrard 1st Dep. at 46:19-47:3; 49:2-50:1. It is incorrect to define the physical characteristic of overweight status as an "impairment" under the WLAD.


Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

1    Washington courts have not ruled that obesity can qualify as an impairment for
2 purposes of a disability discrimination claim. The federal law thus provides guidance here.
3 *See Clarke v. Shoreline School Dist.*, 106 Wn.2d at 118. The most analogous and applicable
4 case is *Morriss v. BNSF Railway Company*, 2014 U.S. Dist. LEXIS 163773, *7 (D. Neb. Nov.
5 20, 2014). In *Morriss*, the claimant alleged disability discrimination under federal and state
6 law (Nebraska) on the basis that he was determined not to be qualified for a safety-sensitive
7 machinist position due to significant health and safety risks associated with a BMI over 40.
8 *Morriss*, 2014 U.S. Dist. LEXIS 163773 at *2. Morriss's claim for failure to hire on the basis
9 of disability or perceived disability was dismissed on summary judgment because his *obesity*
10 *was not an impairment*, his weight did not affect his body systems, and the correlation
11 between his BMI and predisposition to health risks did not constitute an impairment. *Id.* at
12 *8.

13    Numerous other federal courts agree that obesity does not qualify as an impairment if
14 it is not caused by a physiological disorder. For example, *Equal Employment Opportunity*
15 *Commission v. Watkins Motor Lines, Inc.*, 463 F.3d 436 (6th Cir. 2006), affirmed summary
16 judgment dismissal in favor of the employer because morbid obesity was not physiologically
17 caused, thus did not constitute an "impairment". *Id.* at 442-43. Because morbid obesity was
18 not an impairment, the employer could not regard the individual as having an impairment. *Id.*
19 at 443. The court held that without the requirement that the abnormality is a physiologically-
20 caused condition, there would be a "catch-all cause of action for discrimination based on
21 appearance, size, and any number of things. *Id.* at 442-43. Similarly, in *Francis v. City of*
22 *Meriden*, 129 F.3d 281 (2nd Cir. 1997), the court found that an employee disciplined for
23 exceeding fire department weight guidelines could not prove the City regarded him as
24 disabled based on his weight. *Id.* at 287. The court reasoned that physical characteristics, such
25 as weight, are not the result of physiological disorders and are not considered "impairments".
26 *Id.* at 286. The requirement of a physiological disorder causing the obesity condition is

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

recognized around the country as a prerequisite to a finding of a disability, even after the amendments to the ADA. *See also Andrews v. Ohio*, 104 F.3d 803, 808 (6th Cir. 1997); *Cook v. R.I. Dept. of Health*, 10 F.3d 17, 23-25 (1st Cir. 1993).

Recent federal decisions continue to conclude that obesity does not qualify as a disability because obesity in and of itself is not an impairment. *See, e.g., Powell v. Gentiva Health Servs.*, 2014 U.S. Dist. LEXIS 17709 at *19 fn. 9 (S.D. Ala. Feb 12, 2014) (morbid obesity itself is not a disability under the ADAAA and reasoning for pre-ADAAA cases regarding obesity is still applicable); *Sibilla v. Follett Corp.*, 2012 U.S. Dist. LEXIS 46255 at *26 (E.D.N.Y. Mar. 30, 2012) (Under ADAAA, the "fact that an employer regards an employee as obese or overweight does not necessarily mean the employer regards the employee as having a physical impairment."). The 2008 amendments to the ADA may have broadened the definition of a "disability," but the regulations implementing the ADAAA maintained the definition of "impairment."[2] Without any change to the definition of an impairment, the same pre-ADAAA authority that obesity must be caused by a physiological disorder in order to qualify as a disability is persuasive.

The federal authority should be applied here because Washington's statutory definition of "impairment" is nearly identical to the federal regulation. *Compare* RCW

---

[2] Specifically, the pre-amendment definition of "impairment" is 1) any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genital-urinary, hemic and lymphatic, skin, and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 CFR § 1630.2(h) (2008).

The post-ADAAA definition of "impairment" is: (1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed ''mental retardation''), organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 CFR § 1630.2(h)(2011).

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 9
NO. 2:11-cv-01289-JLR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

1   49.60.040(7)(c) to 29 CFR § 1630.2(h)(2011). With no Washington precedent identifying

2   obesity or high BMI as an impairment or disability, the federal case authority guides this

3   Court. *See Clarke*, 106 Wn.2d at 118; *Hollingsworth v. Wash. Mut. Sav. Bank*, 37 Wn. App.

4   386, 390, 681 P.2d 845, 848 (1984) ("in construing RCW 49.60, Washington courts look to

5   interpretation of the federal law"). Under guiding law, because Taylor can present no

6   evidence of any physiological disorder related to his elevated BMI. His elevated BMI was

7   instead a physical characteristic and not an impairment that affects his body systems. BNSF

8   treated his obesity as a characteristic as evidenced by its November 7, 2007 letter stating that

9   even without the submission of any medical information, he would be reconsidered for

10   qualification by simply losing weight. No physiological disorder caused Taylor's elevated

11   BMI, thus as a matter of law he is not impaired and cannot be qualified as disabled under the

12   WLAD.

13         2.   <u>BNSF did not perceive Taylor to be disabled.</u>

14         Taylor's WLAD claims for disability discrimination on the basis of *perceived*

15   disability also fail because BNSF did not regard Taylor as having any impairment. As noted,

16   BNSF perceived Taylor only as he actually was – an applicant with the physical characteristic

17   of obesity, not an applicant with obesity resulting from a physiological disorder. An

18   impairment "does not include characteristic predisposition to illness or disease." *Morriss*,

19   2014 U.S. Dist. LEXIS 163773 at *8 (citing 29 C.F.R. Pt 1630, App. (EEOC Interpretive [9]

20   Guidance on Title I of the Americans with Disabilities Act). BNSF's Medical Officer, Dr.

21   Jarrard, reviewed the medical information supplied by Taylor, which identified Taylor's BMI.

22   Knowing that Taylor was a candidate for a safety-sensitive position, Dr. Jarrard wanted more

23   information to determine whether Taylor could safely perform the job. Pierce Decl., Ex. B at

24   Jarrard 2nd Dep. 30:7-22. The fact that Taylor's BMI is a characteristic predisposition for a

25   potential future diagnosis that could affect his ability to safely perform the job does not

26

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

1  qualify him as impaired. *Morriss*, 2014 U.S. Dist. LEXIS 163773 at *8. There was no belief
2  that Taylor *actually had* an affliction that disqualified him from the position, and no evidence
3  supports such an allegation. *See* Pierce Decl., Ex. O at Jarrard 1st Dep. 86:9-25.

4      The evidence supports that BNSF did not perceive Taylor to have an "impairment."
5  BNSF actually sought out further medical information and opinions to determine whether
6  Taylor had any condition that, if untreated, would prevent his safe performance of his job.
7  Additionally, even without additional medical information, Taylor could still obtain a
8  reevaluation by losing weight. BNSF could not have perceived Taylor as having an
9  impairment, or physiological disorder that caused his obesity where taking care of the obesity
10  itself would have allowed him to be reevaluated and hired without the submission of any
11  further medical information.

12      No fact or law supports a finding that Taylor had an "impairment" or that BNSF
13  perceived Taylor as having an impairment or disability. For this reason alone, plaintiffs
14  cannot establish a prima facie case of disability discrimination and their claims must be
15  dismissed as a matter of law.

16      3.   <u>Plaintiffs fail to allege a cognizable failure to accommodate a disability claim.</u>

17      A disabled employee may allege a disability discrimination claim consisting of a
18  failure to accommodate a disability where the employer failed to take steps "reasonably
19  necessary to accommodate the employee's condition." *Riehl v. Foodmaker, Inc.*, 152 Wash.
20  2d 138, 145, 94 P.3d 930 (2004). Taylor alleges BNSF should have engaged in the interactive
21  process to determine that any disability, if confirmed, could be accommodated to allow him to
22  perform the essential functions of the position.   Complaint at III.A.2.  Taylor's discrimination
23  claim on the basis of failure to accommodate fails as a matter of law because there is no such
24  reasonable accommodation claim where the disability alleged to exist is *perceived*, and does
25  not actually exist.

26


Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1    Employers do not have a duty to accommodate a perceived disability under the

2    WLAD. RCW 49.60.040(7)(d) states "[o]nly for the purposes of qualifying for reasonable

3    accommodation in employment, an impairment must be known or shown through an

4    interactive process to *exist in fact*..." A perceived disability does not exist in fact, and

5    therefore is not required to be accommodated. *See id.*

6    Even if plaintiffs' allegations are true that BNSF did not engage in the interactive

7    process with Taylor, the failure to engage in the interactive process itself does not give rise to

8    a free standing cause of action. *Fey v. State*, 174 Wn. App. 435, 453, 300 P.3d 435 (2013).

9    Simply alleging a failure to accommodate does not allow a claimant to survive summary

10   judgment.

11   Additionally, plaintiffs cannot establish a prima facie case for failure to accommodate,

12   which requires proof that 1) Taylor had a sensory, mental, or physical abnormality that

13   substantially limited his ability to perform the job; 2) he was qualified to perform the essential

14   functions of the position; 3) he gave the employer notice of the disability and its

15   accompanying substantial limitations; and 4) upon receiving notice, the employer failed to

16   affirmatively adopt measures that were both available and medically necessary to

17   accommodate the disability. *See Kelley v. Amazon.com, Inc.*, 2013 U.S. Dist. LEXIS 166534,

18   *8, 15 (E.D. Wash. Nov. 21, 2013) *citing Riehl*, 152 Wn.2d at 14. Taylor cannot establish that

19   he had an abnormality that substantially limited his ability to perform the job, or that he gave

20   BNSF notice of a disability and its accompanying substantial limitations. As a matter of law,

21   BNSF cannot be liable for failure to accommodate the perceived disability.

22       4.   Even if Taylor had an "impairment", his claims still fail because BNSF only
            investigated whether he could safely perform the job.
23

24   BNSF did not commit an unfair practice under RCW 49.60.180(1) because it never

25   refused to hire Taylor. "Employers may seek a health care professional's opinion on whether

26   a person's disability affects the proper performance of a particular job." WAC 162-22-

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 12
            NO. 2:11-cv-01289-JLR

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1131741.10

090(1). Even if BNSF perceived Taylor as disabled, it sought medical opinions on whether he had the conditions that would prevent him from safely performing the job without accommodation. BNSF's request for medical information was legitimate, and based on the lack of information after review by its Medical Officer.

BNSF's request for medical information occurred after it extended Taylor a conditional offer of employment. BNSF wanted to hire Taylor despite his elevated BMI and predisposition to conditions that could make it unsafe for him to work at his position. BNSF did not rescind Taylor's conditional offer based on the "perceived disability," instead, upon learning that Taylor's BMI was over 40, BNSF notified Taylor that it was "unable to determine medical qualification" without additional information. Pierce Decl., Ex. P at BNSF-Taylor 59-60. It was the lack of information in conjunction with Taylor's high BMI that made BNSF unable to determine whether he could properly and safely perform his job. Pierce Decl., Ex O at Jarrard 1st Dep. 86:9-25; Pierce Decl., Ex B at Jarrard 2nd Dep. 30:7-22. BNSF's request for further medical information complied with WAC 162-22-090(1), and cannot be construed as a refusal to hire under RCW 49.60.180(1).

   5.   Even if Taylor was disabled, BNSF's inquiries for more medical information were legal.

Disability discrimination claimants must be able to establish a prima facie discrimination case either by direct evidence of discriminatory intent or through the burden-shifting test under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973). *See Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 180, 23 P.3d 440 (2001), *overruled on other grounds by McClarty v. Totem Elec.*, 157 Wn.2d 214, 137 P.3d 844 (2006). Both tests state that even if the plaintiff presents a prima facie case of disability discrimination and the employer refused to hire the candidate, the employer is entitled to summary judgment dismissal of plaintiff's claims if the disability at issue prevents the proper performance of the particular worker involved. RCW 49.60.180(1).

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

Proper performance is an individualized matter regarding the particular applicant. *Rose v. Hanna Mining Co.,* 94 Wn.2d 307, 312, 616 P.2d 1229, 1232 (1980). BNSF had legitimate concerns that Taylor's BMI could put himself or others at risk in a job that often would require him to be in and around the railyard because of the possibility that one of the conditions that a person with high BMI had a predisposition for would develop without warning. BNSF thus sought medical information to determine whether Taylor could safely and properly perform his job of Electronic Technician. Pierce Decl., Ex. O at Jarrard 1st Dep. 86:9-25; Pierce Decl., B at Jarrard 2nd Dep. 30:7-22. Seeking such information is expressly authorized under Washington law. WAC 162-22-090(1).

Fitness for duty and situational awareness are key components of the proper performance of the Electronic Technician job. *See* Pierce Decl., Ex B at Jarrard 2nd Dep. 11:12-14:10. The job requires being able to carry equipment into a railyard and fix electronics on trains. *Id.* at Ex. C. The railyards have moving trains at all hours of the day, making Taylor's occupational area a zone that requires the utmost application of safety protocols. The electronic devices he was going to be working on involved train to train and train to terminal communications, making the safety of others dependent on his work. *Id.*; Pierce Decl., Ex. B at Jarrard 2nd Dep. 13:4-14:10. Thus, his position is considered a BNSF safety-sensitive position.

The dangers of untreated sleep disorders for those in safety-sensitive positions are known throughout the railroad industry. The Federal Railroad Administration published a Notice of Safety Advisory to the entire railroad community of the dangers of the failure to identify sleep disorders for workers occupying safety-sensitive positions. Pierce Decl., Ex. Q. The Safety Advisory acknowledges how sleep disorders can be related to factors like obesity, and recommends employees' medical examinations include assessment and screening for possible sleep disorders. *Id.* Taylor's initial screening resulted in the identification of risk factors of these conditions that could interfere with the proper and safe performance of his

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

1  job. Again, that is not to say that BNSF believed that he had those conditions; instead his

2  BMI indicated that he was at risk of developing them.

3      Dr. Jarrard sought to ensure Taylor could safely perform his job and not be a danger to

4  himself or others without any discriminatory motive. BNSF determines what kind of

5  additional medical information is required to be produced by a candidate for clearance on a

6  case by case basis. Pierce Decl. Ex. B at Jarrard 2nd Dep. 37:10-22; 63:4-64:9; Pierce Decl.,

7  Ex O at Jarrard 1st Dep. 74:22-75:7. Dr. Jarrard sought to ensure that Taylor did not have any

8  condition that could jeopardize his safety, and if such a condition was found to exist, how to

9  manage it so that he could be qualified as an Electronic Technician. Pierce Decl., Ex. B at

10  Jarrard 2nd Dep. 30:7-22. The additional medical information requested after Taylor was given

11  a conditional offer was directly tied to obtaining medical opinions on whether he had any

12  condition that could prevent his safe and proper performance of his job. Pursuant to the plain

13  language of RCW 49.60.180(1), BNSF cannot be liable for inquiries to ensure whether a

14  candidate could safely and properly perform his job.

15      6.   The ability to work safely in a safety-sensitive job is also a bona fide
16           occupational qualification.

17      The facts listed above also discharge BNSF from any liability for discrimination under

18  the bona fide occupational qualification exception. RCW 49.60.180(1); *Tinjum v. Atl.*

19  *Richfield Co.*, 109 Wn. App. 203, 210, 34 P.3d 855, 859 (2001) *citing Clarke*, 106 Wn.2d at

20  121. The Electronic Technician is a safety-sensitive job, and providing requested medical

21  information for the company to determine whether the candidate can work safely is a bona

22  fide occupational qualification. To satisfy the bona fide occupational qualification, the

23  employer must show that "all or substantially all" persons who do not possess the

24  qualifications would not be able to perform the work safely and efficiently within the limits of

25  reasonable accommodation. *Rose*, 94 Wn.2d at 312. Here, all candidates for safety-sensitive

26  positions undergo medical examinations and are required to be medically cleared if there are

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT - 15
            NO. 2:11-cv-01289-JLR

RS  Ryan, Swanson & Cleveland, PLLC
    1201 Third Avenue, Suite 3400
    Seattle, WA 98101-3034
    206.464.4224  |  Fax 206.583.0359

1131741.10

any issues with whether or not they can safely perform the job. Applicants were put on notice that "Safety is of first importance in the discharge of duty by BNSF Employees" and that they would need to undergo such medical examinations and medical clearance as a condition of employment. Pierce Decl., Ex. A. Taylor failed to provide the medical information requested, which was a bona fide occupational qualification for his position.

For all of these reasons, no viable cause of action exists under the WLAD. Plaintiffs' claims of disability discrimination must be dismissed.

**C.    Plaintiffs' claims for veteran status discrimination fail under Washington law and USERRA.**

It is unclear whether plaintiffs' claims for veteran status discrimination are being made under Washington law or under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Regardless, plaintiffs' claims fail under both.

> 1.    Taylor's WLAD disability claim for honorably discharged veteran status should be dismissed.

Taylor lacks evidence to meet his burden of production that BNSF discriminated against him based on protected honorably discharged veteran status in violation of RCW 49.60.180(1). Taylor alleges BNSF made an unlawful inquiry into his military related disability status. Complaint at III.B.2. His claim could be considered a disparate impact or a disparate treatment clam. The basis of Taylor's veteran status complaint is that BNSF knew a veterans disability determination would not be able to be produced timely and that as a veteran, Taylor would not be able to secure employment from defendant as a result. Pierce Decl., Ex. M at ROGG 13. Plaintiffs' claims fail as a matter of law.

(a)    The disparate treatment claim fails.

Taylor lacks sufficient evidence to bring a claim for disparate treatment. Summary judgment is appropriate where a reasonable jury could not find that the plaintiff's veteran status was a substantial motivating factor in the employer's adverse action. *Scrivener v. Clark*


Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

*Coll.*, 181 Wn.2d 439, 445, 334 P.3d 541 (2014). Disparate treatment claims under RCW 49.60.180 must be proven by either direct or circumstantial evidence. *Hill,* 144 Wn.2d at 180.

Plaintiffs have no direct evidence of discrimination. To establish a prima facie case of discrimination by direct evidence, a plaintiff must provide direct evidence that the defendant acted with a discriminatory motive and that the discriminatory motivation was a "significant or substantial factor in an employment decision . . ." *Kastanis v. Educ. Emps. Credit Union*, 122 Wn.2d 483, 491, 859 P.2d 26, 30 (1993). No evidence exists that any adverse employment decision was made on the basis of honorably discharged veteran status. While BNSF disputes that it took any adverse employment action against Taylor, if any was made, it was due to his failure to provide medical information to clear him for duty, not veteran status.

Lacking direct evidence of discrimination, Taylor can only satisfy his burden of production under the *McDonnell Douglas* framework. Under that framework, the plaintiff has the initial burden to prove a prima facie case. *Michelsen*, 63 Wn. App. at 921. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to present evidence of a legitimate nondiscriminatory reason for its actions. *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 488, 84 P.3d 1231 (2004). The burden then shifts back to the plaintiff to produce evidence that the asserted reason was merely a pretext. *Id.*

To establish a prima facie case, Taylor must first establish through specific and material facts, each element of his prima facie case. *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992). Opinions or conclusory statements do not meet this burden. *Fulton v. State Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 152 (2012) *quoting Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).

BNSF disputes that Taylor can produce evidence that satisfies a prima facie case of veteran status discrimination, but for purposes of this motion, even if he could, BNSF is entitled to summary judgment because it had a legitimate, nondiscriminatory reason for hiring

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1 another candidate, *i.e.* Taylor did not provide medical information requested by BNSF to
2 qualify him for fitness for duty and safe and proper performance of work. *See Rose*, 94 Wn.2d
3 at 312-13. BNSF's reasons for not having Taylor start work were due to workplace safety and
4 his failure to provide the requested information, and had nothing to do with his veteran status.

5        Taylor can thus only survive summary judgment if he can produce evidence sufficient
6 to support an inference that delaying his commencement of work until further information
7 was provided is a mere pretext for the underlying discriminatory purpose of not wanting to
8 hire veterans. *Carle v. McChord Credit Union*, 65 Wn. App. 93, 101, 827 P.2d 1070, 1076
9 (1992). Taylor cannot satisfy his burden of production on pretext because no evidence shows
10 BNSF's explanation for waiting to clear Taylor to start his job without required medical
11 information is a pretext for discriminating against veterans. *See id.* Without being able to meet
12 his burden, BNSF is entitled to dismissal of Taylor's WLAD veteran status discrimination
13 claim as a matter of law.

14         (b)    The disparate impact claim fails.

15        Taylor's claim for discrimination on a disparate impact theory also fails. To establish a
16 prima facie case of disparate impact, the plaintiff must show that (1) a facially neutral
17 employment practice (2) falls more harshly on a protected class. *Kumar v. Gate Gourmet,*
18 *Inc.*, 180 Wn.2d 481, 503, 325 P.3d 193 (2014). Even if a prima facie case can be established,
19 the defendant can defeat the claim by showing that the challenged practice has a manifest
20 relationship to the position in question. *Shannon v. Pay N' Save Corp.*, 104 Wn.2d 722, 727,
21 709 P.2d 799, 804 (1985) If the employer meets this burden, the employee must show other
22 less discriminatory alternatives can equally serve the employer's legitimate business
23 requirements. *Id.*

24        Taylor fails to establish a prima facie case for a disparate impact because there is no
25 evidence that the practice of requesting post-offer medical records of veterans falls more

26

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1131741.10

harshly on a protected class over requesting medical records from non-veteran citizens. Taylor's assertion that veterans are more likely to be unable to timely produce medical records is neither supported by evidence, nor an allegation that would tend to single out veterans. Regardless of whether Taylor can establish a prima facie case or not, the request for medical records is directly related to the safety and fitness for duty concerns of the Electronic Technician position. *See supra* at p. 13-15. Reasonable minds could not differ that a post-employment offer request for medical information related to qualification for a safety-sensitive position at the railway does not create a disparate impact on veterans.

2.   Taylor's Uniformed Services Employment and Reemployment Rights Act ("USERRA") Claim is Unfounded.

Taylor's Complaint alleges that BNSF knew he was an Honorably Discharged former member of the United States Marine Corp. Complaint at III.B.2. USERRA at 38 U.S.C. § 4311(a) states:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

An employee making a federal discrimination claim based on honorably discharged status under USERRA bears the burden of showing by a preponderance of the evidence that the employee's military service was "a substantial or motivating factor" in the adverse employment action. *Goico v. Boeing Co.*, 347 F. Supp. 2d 955, 983 (D. Kan. 2004); *Otero v. N.M. Corr. Dep't*, 640 F. Supp. 2d 1346, 1351 (D.N.M. 2009) *quoting Lewis v. Rite of Passage, Inc.*, 217 Fed.Appx. 785, 787 (10th Cir. 2007). Even if this requirement is met, the employer can still defeat the claim by showing the employer would have taken the adverse action anyway, for a valid reason. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 853–54 (8th Cir.

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224 | Fax 206.583.0359

1  2002)[3] (*citing Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)).

2      Taylor cannot meet his burden to show by a preponderance of the evidence that his

3  military service was a substantial or motivating factor in the adverse employment action.

4  BNSF offered Taylor conditional employment knowing about his veteran status; the veteran

5  status was disclosed on Taylor's resume. Even if there was adverse action or that his military

6  service was a factor in such action, BNSF would have taken the same action regardless of his

7  military status because he failed to provide medical information that would have cleared him

8  for safe and proper performance of his job. Pierce Decl. Ex. O at Jarrard 1st Dep. 42:9 – 43:6;

9  80:17-25; Pierce Decl., Ex B at Jarrard 2nd Dep. 63:4-64:9. There is no issue of fact that

10 BNSF did not discriminate against Taylor in violation of USERRA.

11                              **V. CONCLUSION**

12     Simply put, BNSF did not engage in any unfair or illegal employment practice. BNSF

13 did not discriminate against Taylor based on any disability or veteran status. Plaintiffs' claims

14 fail as a matter of law and they should be dismissed with prejudice.

15     DATED this 15th day of December, 2015.

16                              RYAN, SWANSON & CLEVELAND, PLLC

17

18                              By _____
                                     Britenae Pierce, WSBA #34032
19                                   Teruyuki S. Olsen WSBA 40855
                                     Attorneys for Defendants Burlington
20                                   Northern Railroad Holdings, Inc. and BNSF
                                     Railway Company

21                                   1201 Third Avenue, Suite 3400
22                                   Seattle, Washington  98101-3034
                                     Telephone: (206) 464-4224
23                                   Facsimile: (206) 583-0359
                                     pierce@ryanlaw.com
24                                   olsen@ryanlaw.com

25 ─────────────────────
26 [3] *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148,
   156 L. Ed. 2d 84 (2003).

Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359

1131741.10

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the State of Washington and the United States of America that on December 15, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> J. Roderik Stephens
> The Stephens Law Firm
> 300 North Meridian
> Puyallup, WA 98371
> Phone: 253-863-2525
> rod@stephenslawfirm.com

DATED this 15th day of December, 2015, at Seattle, Washington.

_Susan Smith_ (signature)

Susan Smith



Ryan, Swanson & Cleveland, PLLC
1201 Third Avenue, Suite 3034
Seattle, WA 98101-3034
206.464.4224  |  Fax 206.583.0359