UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CASEY TAYLOR, et al.,

                       Plaintiffs,

    v.

BNSF RAILWAY COMPANY,

                       Defendant.

CASE NO. C11-1289JLR

ORDER DENYING MOTIONS
FOR SUMMARY JUDGMENT

## I.   INTRODUCTION

This matter comes before the court on remand from the Ninth Circuit Court of Appeals. *See Taylor v. Burlington N. R.R. Holdings Inc.*, 801 F. App'x 477 (9th Cir. 2020); (Mandate of USCA (Dkt. # 88).)  Before the court are:  (1) a motion for summary judgment on liability filed by Plaintiffs Casey and Angelina Taylor (Pl. MSJ (Dkt. # 95); Pl. Reply (Dkt. # 101)); (2) a motion for summary judgment filed by Defendant BNSF Railway Company ("BNSF") (Def. MSJ (Dkt. # 99); Def. Reply (Dkt. # 108); and (3) a motion to exclude the testimony of Plaintiffs' expert Dr. Mark V. Roehling filed by

BNSF (MTE (Dkt. # 103).)  Each party opposes the motion for summary judgment

brought by the other.  (*See* Pl. MSJ Resp. (Dkt. # 97); Def. MSJ Resp. (Dkt. # 105).)  The

court has considered the parties' submissions in favor of and in opposition to the motions,

the relevant portions of the record, and the applicable law.  Being fully advised,[1] the

court DENIES the Taylors' motion for summary judgment on liability, DENIES BNSF's

motion for summary judgment, and DENIES as moot BNSF's motion to exclude Dr.

Roehling as an expert.

## II.   BACKGROUND

**A.   Factual Background**

On June 27, 2007, Mr. Taylor applied to work for BNSF in the position of

Electronic Technician.  (Pierce Decl. (Dkt. # 30) ¶ 2, Ex. A ("Application") at 1.)  Mr.

Taylor was then nearing the end of a five-year term of service in the United States Marine

Corps, where he worked as an avionics technician.  (*See id.* at 2-3 (stating the ending date

of Mr. Taylor's service as September 2007); Stephens Decl. (Dkt. # 32) ¶ 2, Ex. 1

("Taylor Dep.") at 10:13-15, 12:7-11, 15:8-12 (noting that Mr. Taylor received an

honorable discharge),[2] 19:19-20:2.)  He listed his Marine Corps service as his most recent

work experience.  (Application at 2.)  On October 29, 2007, BNSF extended a conditional

---

[1] No party requests oral argument (Pl. MSJ at 1; Pl. MSJ Resp. at 1; Def. MSJ at 1; Def. MSJ Resp. at 1; MTE at 1; MTE Resp. (Dkt. # 110) at 1), and the court concludes that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] The application to work at BNSF asked whether Mr. Taylor had been dishonorably discharged.  (Application at 3.)  Mr. Taylor responded in the negative.  (*Id.*)

1  job offer to Mr. Taylor for the Electronic Technician position.  (Taylor Dep. at 22:17-21;

2  Pierce Decl. ¶ 5, Ex. D ("Cond. Offer").)

3        In view of safety considerations associated with the position, BNSF conditioned

4  Mr. Taylor's offer in part on a successful medical screening.  (*See* Cond. Offer at 1

5  ("[T]his offer is contingent on the favorable outcome of a pre-employment background

6  screening, consisting of the following: physical examination . . . and our receipt and

7  review of a completed BNSF medical history questionnaire.  Failure of any portion of our

8  background screening will result in this conditional offer being rescinded.").)[3]  On

9  October 29, 2007, Mr. Taylor submitted a completed medical questionnaire to

10  Comprehensive Health Services ("CHS"), BNSF's outside medical contractor.  (Pierce

11  Decl. ¶ 6, Ex. E ("Med. Questionnaire") at 2-8; *see also* Stephens Decl. ¶ 4, Ex. 3 ("1st

12  Jarrard Dep.") at 29:12-14; Cond. Offer at 1.)  He listed his height as 5'7" and his weight

13  as 250 pounds.  (Med. Questionnaire at 2.)  He disclosed that he experienced back pain

14  and had been diagnosed with or treated for bursitis in his knee as a result of Marine Corps

15  physical training.  (*Id.* at 5; *see also id.* at 3 ("Did you contract any illness or were you

16  injured during military service, and as a result, you intend to apply for a Veteran's

17  Administration Disability Rating?  Yes. . . . Ringing in ears, back pain, knee pain, foot

18  pain, TMJ.").)  Otherwise, he answered most questions on the questionnaire in the

19  negative and described his health as, in general, "Excellent."  (*Id.* at 7.)

20

21      [3] The conditional offer required Mr. Taylor to complete this process within 30 days or by
the date "this position is to begin work – whichever is sooner."  (Cond. Offer at 1.)  Mr. Taylor

22  was to begin work on November 26, 2007.  (Stephens Decl. ¶ 20, Ex. 19.)

ORDER - 3

1     On November 2, 2007, Eileen Henderson of CHS spoke to Mr. Taylor about his

2     medical information.  (*See* Stephens Decl. ¶ 13, Ex. 12 ("Clinical Notes").)  She

3     confirmed his self-reported height and weight and gathered additional information about

4     his back and knee issues.  (*Id.*)  Mr. Taylor reported to Ms. Henderson that he had no

5     current problems with his back or knees, and Ms. Henderson requested Mr. Taylor's

6     medical records.  (*See id.* (requesting records regarding Mr. Taylor's back and knees);

7     Pierce Decl. ¶ 8, Ex. G ("Henderson Emails"); Taylor Dep. at 27:19-22 ("As I recall, she

8     was actually just wanting everything that I had in my military record.").)  On November

9     6, 2007, Mr. Taylor contacted Ms. Henderson again to let her know that he was

10    requesting his medical records from the Veterans Administration ("VA") but was unsure

11    how long he would have to wait.  (*See* Henderson Emails at 1; Taylor Dep. at 27:19-28:2,

12    28:16-29:5.)

13    Mr. Taylor underwent a medical examination with CHS on November 5, 2007.

14    (*See* Stephens Decl. ¶ 20, Ex. 19 ("Physician Opinion"); *see also id.* ¶ 14, Ex. 13 ("IPCS

15    Results"); *id.* ¶ 15, Ex. 14 ("Vision Eval."); Clinical Notes.)  He passed a physical

16    capacities ("IPCS") test[4] that indicated he had adequate shoulder and knee strength.  (*See*

17    IPCS Results; 1st Jarrard Dep. at 32:18-33:10.)  A blood pressure test revealed normal

18    results.  (*See* Vision Eval.; 1st Jarrard Dep. at 75:8-24.)  His height and weight

19    measurements changed slightly from the self-reported values, however, resulting in a

20    body mass index ("BMI") that increased from 39.2 to 41.3.  (*See* Pierce Decl. ¶ 7, Ex. F

21

22    ―――――――――――――
      [4] This test takes its name from the company that invented it—Industrial Physical
      Capacity Solutions.  (*See* 1st Jarrard Dep. at 10:22-11:3.)

ORDER - 4

("Referral") (listing Mr. Taylor's measured height as 5'6" and measured weight at 256 pounds).)  Because of his elevated BMI, CHS referred his medical examination results to BNSF's medical department.  (*See id.*; 1st Jarrard Dep. at 40:9-14; Clinical Notes at 1 ("exam cleared . . . exam bmi 41.3 . . . pending MRs, will defer to BNSF Medical for review" (omissions in original)).)  CHS's referral also noted that Mr. Taylor's medical records were not currently available.  (*See* Referral at 1.)

BNSF medical officer Dr. Michael Jarrard reviewed Mr. Taylor's file on November 7, 2007.  (*See* 1st Jarrard Dep. at 31:11; Pierce Decl. ¶ 10, Ex. I ("Jarrard Email").)  That afternoon he sent an internal email containing the text of a letter that would be sent to Mr. Taylor the next day.  (*See* Jarrard Email; Pierce Decl. ¶ 9, Ex. H ("11/8 Letter").)  The letter informed Mr. Taylor that BNSF was "unable to determine medical qualification . . . due to significant health and safety risks associated with extreme obesity ([BMI] near or above 40) and uncertain status of knees and back."  (11/8 Letter; *see also* Jarrard Email.)  The letter further explained that Mr. Taylor could "permit further evaluation" of his "health status and risks" by submitting (1) a sleep study, (2) a medical report from a doctor documenting various "cardiac risk factors," including fasting lipid profile and fasting blood sugar level, (3) an exercise tolerance test, (4) hip and waist measurements performed by a physician's office or athletic facility, and (5) the complete VA disability determination once it became available.  (11/8 Letter; *see also* Jarrard Email.)  Alternatively, Mr. Taylor could be considered for the job if he lost 10% of his weight and maintained that weight loss for at least six months.  (11/8 Letter; *see also* Jarrard Email.)  BNSF did not offer to pay for any of the listed tests, and Mr. Taylor

1    could not afford them.  (*See* 11/8 Letter; Stephens Decl. ¶ 5, Ex. 4 ("2d Jarrard Dep.") at

2    31:24-32:17; Taylor Dep. at 35:14-36:4, 37:15-24.)

3          Dr. Jarrard testified that he wanted this information because Electronic Technician

4    is a safety-sensitive position.  (*See* 2d Jarrard Dep. at 29:13-30:22; *see also id.* at

5    23:11-25.)  According to Dr. Jarrard, a high BMI is a risk factor for certain health

6    conditions, such as sleep apnea, that could create safety risks if they developed in a

7    person holding such a position.  (*See* 1st Jarrard Dep. at 46:19-47:3, 49:2-50:1; 2d Jarrard

8    Dep. at 23:11-25, 29:13-30:22, 59:16-60:24.)  Dr. Jarrard did not believe that Mr. Taylor

9    had such conditions, only that he was prone to developing them.  (*See* 1st Jarrard Dep. at

10   49:2-17, 86:4-25; 2d Jarrard Dep. at 30:7-22, 44:14-45:4, 59:16-60:24.)

11         Mr. Taylor was not hired for the Electronic Technician position, and on February

12   8, 2008, he filed a discrimination charge with the Equal Employment Opportunity

13   Commission ("EEOC").  (Stephens Decl. ¶ 26, Ex. 25 ("EEOC Charge").)  On March 27,

14   2008, BNSF responded to that charge in a letter to the EEOC.  (Stephens Decl. ¶ 29, Ex.

15   28 ("Resp. to EEOC").)  BNSF denied discriminating against Mr. Taylor and explained

16   to the EEOC that:

17          Mr. Taylor's conditional offer of employment was rescinded due to evidence
            of significant risk associated with extreme obesity and uncertain status of
18          knees and back.  These conditions posed a safety risk to Mr. Taylor and to
            others.  Therefore, Mr. Taylor's conditional offer of employment was
19          rescinded.

20

21

22

1    (*Id.* at 1.) [5]   On August 25, 2010, the Taylors filed the present lawsuit in King County

2    Superior Court and BNSF removed it to federal court on August 4, 2011.   (*See* Not. of

3    Removal (Dkt. # 1).)[6]

4         The Taylors initially brought two types of discrimination claims against BNSF.

5    First, they alleged that BNSF discriminated against Mr. Taylor based on BNSF's

6    perception that he was disabled.   (*See* Compl. at 4-5.)[7]   The Taylors argued that BNSF

7    perceived Mr. Taylor as disabled due to morbid obesity and knee and back problems.

8    (*See id.* at 3-4; 1st MSJ Resp. (Dkt. # 31) at 14-15, 17-18.)   Second, the Taylors alleged

9    that BNSF discriminated against Mr. Taylor on the basis of his status as a veteran.   (*See*

10   Compl. at 5; 1st MSJ Resp. at 23-24.)   Although federal statutes might cover these types

11   of claims, the Taylors brought their claims under the Washington Law Against

12   Discrimination ("the WLAD"), RCW ch. 49.60.   (1st MSJ Resp. at 9 n.70.)

13   **B.    Initial Ruling and Appeal**

14        BNSF filed its initial motion for summary judgment on December 15, 2015.   (1st

15   MSJ. (Dkt. # 29) at 1.)   BNSF asked the court to dismiss the Taylors' disability

16

17        [5] BNSF now asserts that it did not rescind Mr. Taylor's offer but rather did not hire Mr.
18   Taylor because he failed to provide requested medical information. (*See, e.g.*, Def. MSJ at 9-11.)

19        [6] BNSF originally removed the case to federal court on September 20, 2010, and it was
     remanded to state court on June 6, 2011 because it did not involve a federal question and the
20   complaint did not specify the amount of damages sought. (*See* Not. of Removal at 2.)   The case
     was removed on the basis of diversity jurisdiction after the Taylors filed a statement of damages
     that exceeded $75,000. (*Id.*)

21        [7] The court refers to the page numbers at the bottom of the each page in the complaint as
22   included in the notice of removal filed by BNSF. (*See* Not. of Removal at 7-12.)

1    discrimination claim because, it contended, obesity is not a disability unless caused by a

2    physiological disorder, and BNSF did not perceive Mr. Taylor as having a disability

3    related to obesity.  (*See id.* at 6-11.)  BNSF also argued that the Taylors' veteran-status

4    discrimination claim should be dismissed because the Taylors lacked evidence linking

5    BNSF's failure to hire Mr. Taylor to Mr. Taylor's status as a veteran.  (*See id.* at 16-18.)

6          Initially, the court granted summary judgment in BNSF's favor on the Taylors'

7    perceived disability claim related to obesity and veteran status and reserved ruling on the

8    back-and-knee claim.  (*See* 2/17/16 Order (Dkt. # 53) at 19-23.)  For the obesity claim,

9    the court's ruling was based on its conclusion that in order to perceive Mr. Taylor as

10   having a disability, BNSF had to perceive him as being obese due to a physiological

11   disorder or condition rather than just perceive that he was obese.  (*See id.* at 17-19.)

12   After hearing oral argument, the court also granted BNSF summary judgment on the

13   Taylors' back-and-knee claim and dismissed the case with prejudice.  (*See* 3/7/16 Order

14   (Dkt. # 64).)  The Taylors appealed the court's ruling on the obesity and back-and-knee

15   claims.  (Not. of Appeal (Dkt. # 67).)

16         On appeal, the Ninth Circuit affirmed the court's grant of summary judgment on

17   the back-and-knee claim and vacated the grant of summary judgment on the obesity

18   claim.  *Taylor*, 801 F. App'x at 480.  Before ruling on the obesity claim, the Ninth Circuit

19   certified the following question to the Washington State Supreme Court:

20         Under what circumstances, if any, does obesity qualify as an "impairment"
             under the Washington Law against Discrimination (WLAD), Wash. Rev.
21         Code § 49.60.040?

22

*Taylor v. Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, 853 (9th Cir. 2018).  The

Washington Supreme Court answered as follows:

> We hold that obesity is always an impairment under the plain language of
> RCW 49.60.040(7)(c)(i) because the medical evidence shows that it is a
> "physiological disorder, or condition" that affects many of the listed body
> systems.  Obesity does not have to be caused by a separate physiological
> disorder or condition because obesity itself is a physiological disorder or
> condition under the statute.

*Taylor v. Burlington N. R.R. Holdings, Inc.*, 444 P.3d 606, 609 (Wash. 2019).

Based on this answer, the Ninth Circuit ruled that a reasonable jury could find that

BNSF perceived Mr. Taylor as having a disability (obesity); that he was nevertheless able

to perform the essential functions of the job; and that BNSF's perception of his disability

was a substantial factor in its decision to deny him employment.  *Taylor*, 801 F. App'x at

480.  In reaching this conclusion, the Court held that the Taylors' claim—based on

allegations that BNSF withdrew a conditional offer of employment because of a

prospective employee's failure to pay for medical testing that the employer requested

because of a perceived disability or impairment—presented a valid legal theory under the

WLAD.  *Id.* at 479 (citing *EEOC v. BNSF Railway Co.*, 902 F.3d 916, 924-27 (9th Cir.

2018)).  It also noted that BNSF did not dispute that Mr. Taylor could perform the

essential functions of the job "in these proceedings."  *Id.*  Based on these conclusions, the

Ninth Circuit vacated this court's grant of summary judgment on the obesity claim and

remanded.  *Id.* at 480.

1   **C.    Post-Remand Procedural Background**

2         On remand, the court set a new trial date of November 1, 2021, and a new

3   dispositive motions deadline of August 3, 2021.  (Sched. Order (Dkt. # 94).)  On July 1,

4   2021, the Taylors filed a motion for summary judgment as to liability on the obesity

5   claim.  (Pl. MSJ.)  On July 22, 2021, BNSF filed its own motion for summary judgment

6   on the obesity claim.  (Def. MSJ.)

7                           **III.    ANALYSIS**

8   **A.    Motions for Summary Judgment**

9         1.  <u>Legal Standard</u>

10        Summary judgment is appropriate if the evidence shows "that there is no genuine

11  dispute as to any material fact and the movant is entitled to judgment as a matter of law."

12  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

13  *Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the

14  outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A

15  factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact

16  finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986,

17  992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

18        The moving party bears the initial burden of showing there is no genuine issue of

19  material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.

20  If the moving party does not bear the ultimate burden of persuasion at trial, it can show

21  the absence of a dispute of material fact in two ways:  (1) by producing evidence negating

22  an essential element of the nonmoving party's case, or (2) by showing that the

1   nonmoving party lacks evidence of an essential element of its claim or defense.  *Nissan*

2   *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving

3   party will bear the burden of persuasion at trial, it must establish a prima facie showing in

4   support of its position on that issue.  *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d

5   1465, 1471 (9th Cir. 1994).  That is, the moving party must present evidence that, if

6   uncontroverted at trial, would entitle it to prevail on that issue.  *Id*. at 1473.  If the moving

7   party meets its burden of production, the burden then shifts to the nonmoving party to

8   identify specific facts from which a fact finder could reasonably find in the nonmoving

9   party's favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

10          The court is "required to view the facts and draw reasonable inferences in the light

11   most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

12   The court may not weigh evidence or make credibility determinations in analyzing a

13   motion for summary judgment because these are "jury functions, not those of a judge."

14   *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

15   simply show that there is some metaphysical doubt as to the material facts . . . . Where

16   the record taken as a whole could not lead a rational trier of fact to find for the

17   nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal

18   quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

19   475 U.S. 574, 586-87 (1986)).

20          2.  The Taylors' Motion for Summary Judgment

21          The Taylors move for summary judgment on liability on their WLAD obesity

22   claim, arguing that BNSF violated the WLAD when it (1) extended a conditional

1    employment offer to Mr. Taylor; (2) diagnosed him with morbid obesity; (3) ordered him

2    to obtain and pay for a sleep study that other applicants were not required to obtain; and

3    (4) rescinded his conditional offer of employment when he could not afford that

4    additional medical testing.  (Pl. MSJ at 1-2.)

5         BNSF first argues that the court should not consider the merits of the Taylors'

6    motion because it is barred by the mandate rule.  (Pl. MSJ Resp. at 10 (citing *Visciotti v.*

7    *Martel*, 862 F.3d 749, 763 (9th Cir. 2016).)[8]  According to BNSF, because the Taylors

8    asked the Ninth Circuit in their supplemental briefing to affirmatively find that BNSF

9    discriminated against Mr. Taylor and the Ninth Circuit found that "a reasonable jury

10   could find" that BNSF perceived Mr. Taylor as obese, this court is precluded from ruling

11   in the Taylors' favor on this issue.  (*Id*. (citing *Taylor*, 801 F. App'x at 479).)  Nonsense.

12        In *Visciotti*, the Ninth Circuit discussed the law of the case doctrine, whereby "on

13   remand a lower court is bound to follow the appellate court's decision as to issues

14   decided explicitly or by necessary implication."  862 F.3d at 763.  But here, the Ninth

15   Circuit did not explicitly decide that the record was insufficient to support a grant of

16   summary judgment in the Taylors' favor.  *See generally Taylor*, 801 F. App'x 477.  Nor

17   does Ninth Circuit's decision to ignore the Taylors' supplemental request that the Court

18

19        [8] BNSF appears to conflate the mandate rule with the law of the case doctrine.  (*Compare*
     Pl. MSJ Resp. at 10) (treating the concepts as identical), *with United States v. Garcia-Beltran*,

20   443 F.3d 1126, 1129 (9th Cir. 2006) (explaining the distinct doctrines).)  Because BNSF cites
     caselaw and makes arguments rooted in the law of the case doctrine, the court analyzes its

21   argument under that framework.  (Pl. MSJ Resp. at 10.)  Regardless, the Ninth Circuit did not
     mandate that this court reject a summary judgment motion brought by the Taylors based on the

22   factual record of this case.  *See generally Taylor*, 801 F. App'x 477.

1  affirmatively find in their favor, rather than just vacate and remand, "necessarily imply"

2  that the Court decided the issue.  The Ninth Circuit did not even discuss the Taylors'

3  request that the Court affirmatively rule in their favor.  *See generally id.*  Contrary to

4  BNSF's assertions, this does not imply that the Court was denying a motion for summary

5  judgment that the Taylors had yet to even file.  Rather, it implies that the Ninth Circuit

6  was leaving this issue to be decided on remand by the trial court.  Accordingly, that is

7  what this court shall do.

8          Turning to the merits, BNSF argues that the Taylors have failed to demonstrate a

9  lack of genuine dispute as to whether Mr. Taylor was able to perform the essential

10 functions of the job.  (Pl. MSJ Resp. at 13-14.)  The court agrees.

11         "To prevail on his WLAD claim, [Mr.] Taylor must prove . . . that he was able to

12 perform the essential functions of the job . . . ."  (Pl. MSJ at 8 (citing *Hill v. BCTI Income*

13 *Fund-I*, 23 P.3d 440, 452 (Wash. 2001).)  The Taylors make two arguments in attempting

14 to satisfy their burden  regarding this element of their claim.  First, they cite the Ninth

15 Circuit's statement that BNSF "does not dispute in these proceedings that Mr. Taylor was

16 able to perform the essential functions of the job" to establish this element.  (Pl. MSJ at

17 11 (citing *Taylor*, 801 F. App'x at 479.)  But BNSF's failure to brief this issue on appeal

18 when it did not undergird this court's initial ruling cannot properly be viewed as a

19 concession.  (*See generally* 2/17/16 Order (granting summary judgment to BNSF without

20 discussing essential functions element of WLAD claim).)  Thus, the Taylors must

21 demonstrate that there is no genuine dispute of material fact using the evidence in the

22 record.

1    The Taylors' second argument is based on the evidence that Mr. Taylor cleared

2    BNSF's medical examination and passed the physical capacities test, demonstrating that

3    he possessed adequate shoulder and knee strength for the position.  (Pl. MSJ at 11 (citing

4    IPCS Results).)  But BNSF provides deposition testimony from its medical officer, Dr.

5    Jarrard, who states that Mr. Taylor passing this test does not necessarily mean he could

6    perform the minimum qualifications required by the position.  (2d Jarrard Dep. at

7    32:24-33:10 ("Q. So, in other words, [passing the IPCS test means] he could perform the

8    minimum qualifications required by that position? . . . A.  No, that's not what that

9    means.")  Dr. Jarrard testified that he asked for medical records and additional

10   information about Mr. Taylor's history because they could help him assess the risk of

11   recurring problems with Mr. Taylor's reported knee and back issues.  (*Id*. at 42:9-24;

12   44:12-24.)  Thus, the court is presented with competing evidence as to whether Mr.

13   Taylor has established that he was able to perform the essential functions of the job.  The

14   court may not weigh evidence or make credibility determinations in analyzing a motion

15   for summary judgment because these are "jury functions, not those of a judge."

16   *Anderson*, 477 U.S. at 255.  The court concludes that a reasonable jury could find that

17   Mr. Taylor was not able to perform the essential functions of the Electronic Technician

18   position.  Accordingly, granting summary judgment is not appropriate.

19          BNSF raises several other arguments regarding the Taylors' motion for summary

20   judgment.  (*See* Pl. MSJ Resp. at 11-13 (arguing BNSF never rescinded Mr. Taylor's job

21   offer); 14-18 (arguing the Taylors cannot demonstrate perception of obesity was a

22   substantial factor); 18-21 (arguing existence of bona fide occupational qualification).)

1   But as the court has determined that the Taylors have failed to demonstrate a lack of

2   genuine dispute regarding Mr. Taylor's ability to perform the essential functions of the

3   job, it declines to address these arguments at this time.[9]

4          3.   BNSF's Motion for Summary Judgment

5          BNSF also moves for summary judgment, arguing that the Taylors' WLAD claim

6   based on perception of obesity fails as a matter of law.  (Def. MSJ at 1.)  It contends that

7   summary judgment should be awarded for four reasons:  (1) Mr. Taylor cannot

8   demonstrate that BNSF refused to hire Mr. Taylor (*id.* at 9-11); (2) Mr. Taylor cannot

9   demonstrate he was qualified for the position (*id.* at 11-14); (3) BNSF prevails under a

10  defense of bona fide occupational qualification (*id.* at 14-17); and (4) BNSF prevails

11  under a defense of proper performance (*id.* at 17-19).  The court addresses each in turn.

12         *a.   Refusal to Hire*

13         First, BNSF argues that Mr. Taylor cannot demonstrate that it rescinded his offer

14  of employment because BNSF only "notified Mr. Taylor that it was 'unable to determine

15  medical qualification' without medical information" and then "took no action on the

16  application" after that notification.  (*Id*. at 10 (quoting 11/8 Letter).)  According to BNSF,

17  it presented Mr. Taylor with "two options to enable BNSF to further evaluate [Mr.]

18  Taylor's health status and risks:  1) to provide additional medical information; or 2) for

19  [Mr.] Taylor to lose weight and maintain that weight loss."  (*Id.*)  Thus, in BNSF's eyes it

20  did not refuse to hire Mr. Taylor, it just "took no action on the application" after it

21  

22      [9] The court notes, however, that BNSF raises several similar arguments in its own motion for summary judgment, which the court addresses below.  *See infra* § III.A.3.

1    presented him with these two options.  (*Id.*)  But BNSF's reliance on these options is

2    misplaced.

3           The first option that BNSF provided was for Mr. Taylor to submit additional

4    medical information, including the results of a sleep study that Mr. Taylor could not

5    afford to take.  (11/8 Letter; Taylor Dep. at 19:5-20:4.)  The second option for Mr. Taylor

6    was to lose 10% of his body weight and maintain that weight loss for six months.  (11/8

7    Letter.)  Mr. Taylor had to satisfy one of these two options if he wanted to receive a

8    favorable outcome on his medical examination.  (*Id.*)  According to his offer letter, if he

9    failed to receive a favorable outcome on his medical examination, his offer would be

10   rescinded.  (Cond. Offer.)  Thus, Mr. Taylor had to comply with one of these two options

11   if he did not want his offer to be rescinded.

12          But the Ninth Circuit has already determined that requiring Mr. Taylor to

13   complete the first option—submission of medical information including a sleep study Mr.

14   Taylor could not afford—presents a valid claim under the WLAD.  The Court held that

15   an employer violates the WLAD "when it withdraws a conditional offer of employment

16   based on a prospective employee's failure to pay for medical testing that the employer

17   has required solely because of the prospective employee's perceived disability or

18   impairment."  *Taylor*, 801 F. App'x at 479 (citing *BNSF Railway Company*, 902 F.3d at

19   924-27).  The second option—Mr. Taylor losing 10% of his body weight—is, in essence,

20   a requirement that Mr. Taylor eliminate the disability that BNSF perceived Mr. Taylor to

21   have if he wanted to receive employment.  *See Taylor*, 444 P.3d at 609 (holding that

22   obesity is always an impairment under the WLAD).  Requiring a prospective employee to

1    meet a condition that violates the WLAD in order for him to fulfill the conditions of his

2    offer is a refusal to hire. *See Taylor*, 801 F. App'x at 479.  Giving the prospective

3    employee two options that violate the WLAD does not change that.

4          The characterization of BNSF's actions as a rescission of a job offer is supported

5    by BNSF's own statements in proceedings before the EEOC, where it argued that "BNSF

6    did not discriminate against Casey Taylor based upon perceived disability when

7    rescinding his conditional offer of employment as an Electronic Technician." (Resp. to

8    EEOC at 1.)  Mr. Taylor also testified in his deposition that a BNSF representative made

9    clear to him that he had been removed from consideration for the position and that even if

10   he provided information it would go toward perhaps qualifying him for a future opening.

11   (Taylor Dep. at 397-40:3.)  Accordingly, examining the evidence in the light most

12   favorable to Mr. Taylor, a reasonable jury could find that BNSF refused to hire Mr.

13   Taylor or rescinded his conditional offer.

14          b.  *Ability to Perform Essential Functions*

15          BNSF's second argument is that Mr. Taylor cannot demonstrate that he had the

16   ability to perform the essential functions of the job. (Def. MSJ at 11.)  But the Taylors

17   point to ample evidence that could support a jury concluding that Mr. Taylor could

18   perform the essential functions of the job.  Mr. Taylor's physical capacities test

19   determined that he "[m]eets minimum physical demands of the essential functions of

20   Electronic Technician." (IPCS Results.)  Indeed, the very fact that Mr. Taylor received a

21   conditional offer could support a reasonable jury's finding that he could perform the

22   essential functions of the job. (*See* Cond. Offer.)  BNSF has presented competing

1    evidence that this test alone does not necessarily mean that Mr. Taylor would be able to

2    perform the essential functions of the job.  *See supra* § III.A.2; (2d Jarrard Dep. at

3    32:24-33:10.)  But rather than support BNSF's motion for summary judgment, this

4    highlights the existence of a genuine dispute of material fact as to Mr. Taylor's ability to

5    perform the essential functions of an Electronic Technician.  Thus, BNSF's second

6    argument in favor of summary judgment fails.

7               *c.  Bona Fide Occupational Qualification*

8          BNSF's third argument is based on the statutory defense of bona fide occupational

9    qualification.  (Def. MSJ at 14-17.)  Under the WLAD, an adverse employment action

10   that would otherwise be discriminatory can be justified if the employer can establish that

11   the refusal to hire is based upon a bona fide occupational qualification.  RCW

12   49.60.180(1).  To successfully raise the defense, an employer must demonstrate that "all

13   or substantially all" prospective employees who do not possess the qualification would

14   not be able to efficiently perform the work at issue.  *Franklin Cty. Sheriff's Off. v. Sellers*,

15   646 P.2d 113, 117 (Wash. 1982); *see also Kries v. WA-SPOK Primary Care, LLC*, 362

16   P.3d 974, 989 (Wash. Ct. App. 2015).

17         BNSF contends that that the bona fide occupational qualification that Mr. Taylor

18   lacks is the successful completion of its medical clearance procedures.  (Def. MSJ at 15.)

19   But viewing the bona fide occupational qualification this abstractly negates the purpose

20   of the WLAD of preventing discrimination against specific impairments.  *Blanchette v.*

21   *Spokane County Fired Protection District No. 1* is instructive.  836 P.2d 852 (Wash. Ct.

22   App. 1992).  There, a prospective fire fighter was denied employment after the fire

district determined he did not meet the required medical standards due to his diagnosis of

Crohn's disease.  *Id.* at 859-60.  Rather than examine whether passage of the fire

district's medical standards was a bona fide occupational qualification, the court

examined the underlying reason for the failure:  the prospective employee's condition

that caused the failure.  *Id*. at 860-61.  The burden on the fire department, then, was to

"prove that all or substantially all persons with Crohn's disease could not properly

perform the duties of a fire fighter."  *Id.* at 861.  Here, then, the proper framing of the

issue is not whether Mr. Taylor passed BNSF's medical clearance procedures.  It is

whether there is a bona fide occupational qualification such that all or substantially all

individuals who have the condition that caused Mr. Taylor fail the medical clearance

procedure could not perform the duties of an Electronic Technician.  The Ninth Circuit

has already determined that a reasonable jury could find that BNSF's perception of his

obesity was a substantial factor in BNSF's decision to deny Mr. Taylor employment.

*Taylor*, 801 F. App'x. at 480.  Thus, in order to succeed on summary judgment, BNSF

must demonstrate that all or substantially all obese individuals could not effectively

perform the duties of an Electronic Technician.  It cannot.

BNSF points to *Greene v. Union Pacific Railroad Co.* to support the proposition

that obesity can preclude a prospective employee from having a bona fide occupational

qualification.  548 F. Supp. 3 (W.D. Wash. 1981).  In that case, a railroad company

denied the request of an employee to transfer to the position of fireman based on his

weight, high blood pressure, and osteoarthritis of the spine.  *Id.* at 5.  The court held that

obesity was not a disability under Washington law and dismissed the complaint with

1   prejudice.  *Id*.  It also noted that even if obesity was a handicap, the height-weight

2   requirements of the railroad company for the firefighter position presented a bona fide

3   occupational qualification for the category of fireman.  *Id*.  This court does not find the

4   40-year-old dicta in *Greene* persuasive.  Both medical science and Washington disability

5   law have progressed in the past four decades.  Health professionals' understanding of

6   obesity today is different than it was in 1981, and, in part because of that evolution,

7   obesity is recognized as an impairment under the WLAD in all circumstances.  *See*

8   *Taylor*, 444 P.3d at 609, 612-15 (discussing nature of obesity as an impairment).  Further,

9   even if the height and weight requirements used by the railroad company in *Greene* did

10  present a bona fide occupational qualification for a railway fire fighter, the court fails to

11  see how that is immediately analogous to the requirements for a railway Electronic

12  Technician.  Thus, BNSF must demonstrate based on the evidence in the record that

13  having a BMI under 40 is a bona fide occupational qualification for the role of Electronic

14  Techician.

15       To this end, BNSF asserts that there are "inherent dangers of working around

16  moving trains, including while carrying heavy equipment."  (Def. MSJ at 16.)  It also

17  points to Dr. Jarrard's testimony that obesity is an "indicator of possible risk of several

18  other health conditions," primarily sleep apnea and diabetes, and can lead to "a high

19  probability of a potentially very serious outcome."  (Def. MSJ at 18 (citing 1st Jarrard

20  Dep. at 49:2-50:1; 2d Jarrard Dep. at 59:16-60:20.)  But the argument that obesity is such

21  a significant risk factor for other conditions such that obese individuals cannot effectively

22  perform any safety-sensitive position is belied by BNSF's treatment of incumbent

1    employees.  Dr. Jarrard testified that incumbent employees in the same obesity

2    classification as Mr. Taylor were not all required to get medical testing and it was done

3    on a case-by-case basis.  (2d Jarrard Dep.  at 24:9-22.)  He continued that circumstances

4    that might lead to medical testing for an obese incumbent employee included falling

5    asleep on the job or returning from medical leave for a serious medical condition.  (*Id.* at

6    25:1-19.)  Thus, while BNSF maintains that all or substantially all individuals in Mr.

7    Taylor's obesity classification cannot effectively perform safety sensitive positions

8    because of the risk of obesity indicating other health conditions, BNSF does not require

9    all or substantially all obese employees to undergo testing for these possible conditions.

10   This contradiction strongly suggests that BNSF's own policies do not treat all or

11   substantially all obese employees as being at high risk of conditions that would prevent

12   them from effectively performing safety sensitive positions.  At the very least, it creates a

13   material issue of fact as to whether there is a bona fide occupational qualification that Mr.

14   Taylor lacks.  Accordingly, BNSF has not met its burden of demonstrating a bona fide

15   occupational qualification that justifies any adverse employment actions it may have

16   taken against Mr. Taylor.

17           *d.  Proper Performance*

18           BNSF's fourth argument is that the statutory defense of proper performance

19   justifies a grant of summary judgment.  (Def. MSJ at 17-19.)  Like the bona fide

20   occupational qualification defense, the WLAD provides that an otherwise discriminatory

21   act is allowable "if the particular disability prevents the proper performance of the

22   particular worker involved."  RCW 49.60.180(1).  Thus, if BNSF can demonstrate that

1    Mr. Taylor's high BMI prevented him from properly performing the job of Electronic

2    Technician, there can be no liability under the WLAD.  *See Rose v. Hanna Mining Co.*,

3    616 P.2d 1229, 1231 (Wash. 1980).

4         As BNSF admits, its arguments in favor of proper performance are similar to its

5    arguments in supporting the defense to a bona fide occupation qualification.  (Def. MSJ

6    at 17.)  They also fail for similar reasons.  Just as BNSF has not demonstrated that all or

7    substantially all obese individuals cannot effectively perform the functions of an

8    Electronic Technician, it has not demonstrated that one particular obese individual, Mr.

9    Taylor, could not perform those functions because of his obesity.  BNSF cannot establish

10   the defense of proper performance on summary judgment.

11        Accordingly, having determined that none of BNSF's arguments in favor of

12   summary judgment are availing, the court DENIES BNSF's motion.

13   **B.     Motion to Exclude**

14        BNSF moves to exclude the testimony of the Taylors' expert, Dr. Mark V.

15   Roehling.  (MTE).  The Taylors respond that BNSF's counsel did not consult with them

16   to determine if they still intended to call Dr. Roehling on remand, and that they withdraw

17   Dr. Roehling as an expert witness.  (MTE Resp.)  Accordingly, the court DENIES the

18   motion to exclude as moot.  None of the court's above analysis of the summary judgment

19   motions relies on Dr. Roehling's report or testimony.

20   //

21   //

22   //

1

## IV.    CONCLUSION

2        For the foregoing reason the court DENIES Mr. Taylor's motion for summary

3   judgment (Dkt. # 95), DENIES BNSF's motion for summary judgment (Dkt. # 99), and

4   DENIES as moot BNSF's motion to exclude Dr. Roehling as an expert (Dkt. # 103).

5

6        Dated this 27th day of August, 2021.

7

8

9                                                        JAMES L. ROBART
                                                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22